**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| PATI JOHNS, individually, and on behalf of a class of other similarly situated employees, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 4:08CV1105 (JCH) |
| PANERA BREAD COMPANY, et al., | ) ) ) |
| Defendants. | ) |

**APPLICATION FOR ATTORNEYS' FEES AND EXPENSES**

**I.   INTRODUCTION**

Following a mediation that included vigorous arm's-length negotiations between experienced attorneys and with the assistance of a highly respected mediator, Plaintiffs Counsel Girard Gibbs LLP and Stueve Siegel Hanson LLP ("Plaintiffs' Counsel") have negotiated an outstanding settlement on behalf of the Class in the amount of $500,000. The result achieved here was due to the skill and hard work of Plaintiffs' Counsel.

As part of this litigation, Plaintiffs' Counsel conducted extensive investigation; filed a detailed complaint; analyzed and researched the contentions in Defendants' answers; prepared and served written discovery; reviewed and analyzed thousands of pages of documents produced by Defendants; responded to written discovery; both took and defended depositions; analyzed the damages likely to be proven at trial; participated in a mediation with a highly respected mediator; and successfully negotiated a very favorable settlement for the Class.

Plaintiffs' Counsel have not been paid for their efforts. This case was commenced in February 2008, and over 700 hours of attorney and paralegal time have been expended in this matter, the repayment for which has been, from the outset, wholly contingent on the result achieved. *See* Declaration of Richard M. Paul III at ¶ 4, attached hereto as Exhibit A; Declaration of Eric Gibbs at ¶ 4, attached hereto as Exhibit B. For the reasons set forth herein, Plaintiffs' Counsel respectfully submit that the requested attorneys' fees and expenses are reasonable under the applicable legal standards and, in light of the effort expended, the risk undertaken and the result achieved, should be awarded by the Court. For these efforts, Plaintiffs' Counsel request that the Court award attorneys' fees of 25 percent of the Settlement Fund, plus the expenses that were necessarily incurred to adequately prosecute this case.

## II.   LEGAL STANDARD

### A.   A Reasonable Percentage of the Fund Recovered Is the Preferred Approach for Awarding Attorneys' Fees in Common Fund Cases

For their efforts on behalf of the Class, Plaintiffs' Counsel are applying for compensation from the Settlement Fund on a percentage basis. The percentage method is the preferred method of fee recovery because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the class and most fairly correlates counsel's compensation to the benefit conferred on the class.

It has long been recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478

(1980). The purpose of this doctrine is to avoid unjust enrichment and to spread litigation costs proportionately among all the beneficiaries. *Id.* This common fund doctrine is firmly rooted in American case law. *See, e.g.*, *Trustees v. Greenough,* 105 U.S. 527 (1882); *Central R. & Banking Co. v. Pettus,* 113 U.S. 116 (1885); *Blum v. Stenso*n, 465 U.S. 886, 900 n.16 (1984).

"In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved but also 'well-established.'" *In re Xcel Energy, Inc. Sec. Derivative, ERISA Litig.,* 364 F.Supp.2d 980, 991 (D. Minn. 2005); *see also Johnston v. Comerica Mortg. Corp,* 83 F.3d 241, 246 (8th Cir. 1996) (approving the percentage method of awarding fees). Applying *Johnston,* courts in this Circuit routinely state their preference for and apply the percentage-of-the-fund approach in awarding attorneys' fees in common fund cases. *See, e.g., Petrovic v. AMOCO Oil Co.,* 200 F.3d 1140, 1157 (8th Cir. 1999); *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir. 2002); *In re Xcel Energy,* 364 F.Supp.2d at 993.

Compensating counsel in common fund cases on a percentage basis makes good sense. First, it is customary for contingent fee attorneys to be compensated on a percentage-of-the-recovery method. Second, it rewards efficiency and provides Plaintiffs' Counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances. *See In re Xcel Energy,* 364 F.Supp.2d at 993; *Kirchoff v. Flynn,* 786 F.2d 320, 325-26 (7th Cir. 1986). Third, use of the percentage method decreases the burden imposed on the court by the "lodestar" method and assures that class members do not experience undue delay in receiving their share of the settlement.

### B. A Fee of 25 Percent of the Settlement Fund Is Reasonable in This Case

Many courts within this Circuit and the neighboring circuits have awarded fees in common fund cases at or above the 25 percent requested here. *See e.g., In re Xcel Energy,* 364 F.Supp.2d 980 (approving fee award of 25 percent); *Spencer v. Comserv Corp.*, 1986 WL 15155, at *12 (D. Minn. 1986) ("A fee award of approximately twenty five percent (25%) of a fund is reasonable."); *Barnwell v. Corrections Corp. of America,* Order Approving Settlement Agreement, Case No. 2:08-CV-02151-JWL-DJW (D. Kan. Feb. 12, 2009) (awarding attorneys' fees and costs in the amount of 33 percent of the maximum gross settlement amount); *West, et al. v. First Franklin Financial Corp.*, Order Finally Approving FLSA Collective Action Settlement, Case No. 2:06-CV-02064-KHV-JPO (D. Kan. July 31, 2007) (awarding attorneys' fees and costs in the amount of 30 percent of the settlement fund); *Perry v. Nat'l City Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards, Case No. 3:05-CV-00891-DRH-PMF (S.D. Ill. March 3, 2008) (approving requests for attorneys' fees and costs of 33 percent of the settlement fund). In addition, the fee requested recognizes the complex dynamics that were mastered and the difficulties overcome to reach a resolution of this case.

### C. The Relevant Factors Justify a Fee Award of 25 Percent

In examining the factors that make a 25 percent fee appropriate here, it is instructive to look at the factors typically considered by the courts in this and other circuits. Consideration of the factors discussed below confirms the reasonableness of the fee requested.

### 1. The Result Achieved

Many courts recognize that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re King Res. Co. Sec. Litig.,* 420 F. Supp. 610, 630 (D. Colo. 1976) ("the amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client"); *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd,* 899 F.2d 21 (11th Cir. 1990); *In re Xcel Energy,* 364 F.Supp.2d at 994.

Through diligent pursuit of the claims and skillful negotiation, Plaintiffs' Counsel have provided a successful result for the Class by creating a Settlement Fund of $500,000. The settlement has been achieved through the efforts of Plaintiffs' Counsel and without the necessity of prolonged litigation and trial, justifying a 25 percent fee. *See In re Xcel Energy,* 364 F.Supp.2d at 994. From the inception of this action, Plaintiffs' Counsel put together an experienced team of lawyers that are responsible for this positive result. Moreover, given the defenses on liability and damages raised by Defendants in their Answers and during mediation, the Settlement Fund may be equal to or more than the Class would have recovered if it had proceeded to trial. "The certainty of fixed recovery by way of agreement is often preferable to the vagaries of what might be achieved by a trial." *Seiffer v. Topsy Int'l, Inc.,* 70 F.R.D. 622, 629 (D. Kan. 1976). In sum, Plaintiffs' Counsel respectfully submit that the Class could not have gotten better representation and the result achieved reflects that fact.

## 2.     The Difficulty and Risks Attendant to the Litigation

From the outset, Plaintiffs' Counsel faced many risks in pursuing this litigation to a successful conclusion. The resources available to Defendants required Plaintiffs' Counsel to expend professional and financial resources.  In addition, had this settlement not been achieved, Plaintiff faced expensive discovery and motion practice, lengthy fact and expert discovery, a costly jury trial, and years of post-trial appeals, with ultimate success far from certain.  Numerous cases have recognized that risk is an important factor in determining the fee award.  *E.g., In re Xcel Energy,* 364 F. Supp. 2d at 994; *In re BankAmerica Corp,* 228 F. Supp. 2d at 1064 (noting complexity of class action as factor in determining reasonableness of fee award); *In re Charter Commc'ns Inc., Sec. Litig.,* MDL Docket No. 1506, 2005 WL 4045741, at *15 (E.D. Mo. June 30, 2005) (finding that class actions "are by their nature, complex and difficult to prove.").

At the time of settlement, the substantial risks and uncertainties of continued litigation made it far from certain that an ultimate recovery would be obtained for the Class.  Because the issue of whether an exemption applied to exempt the putative class members from the overtime requirements of California law is a very fact-intensive inquiry due to the quantitative duties test (i.e., do the exempt duties take up more than 50 percent of the employees time), the parties would have been required to spend substantial time and resources to attempt to prove their respective positions.  This would have included lengthy discovery and significant research, arguments, and briefing on the application of the exemption to the Plaintiffs and putative class members.

The complexity and risks of this action plainly support the fee requested. Plaintiffs' Counsel have received no compensation during the course of this litigation, and have advanced out-of-pocket expenses of $21,887.10 in prosecuting the case for the benefit of the Class. *See* Paul Decl. at ¶ 6; Gibbs Decl. at ¶ 6. Any fee award or expense reimbursement to Plaintiffs' Counsel has always been at risk and completely contingent on the result achieved, supporting the requested fee.

### 3.     The Time and Labor Involved

Plaintiffs' Counsel have spent considerable amounts of time in this case. Two law firms expended the time and energy of multiple lawyers as well as paralegals and staff in order to properly and adequately investigate the facts and legal consequences of pursuing this action. To date, Plaintiffs' Counsel have spent over 700 hours prosecuting this litigation. *See* Paul Decl. at ¶ 4; Gibbs Decl. at ¶ 4. As discussed previously, this time includes the pre-filing investigation, extensive discovery, client contact and communications, and a two-day mediation.

### 4.     The Quality and Efficiency of the Work

The quality and efficiency of Plaintiffs' Counsel's work on this case was superior and is reflected in the result. Plaintiffs' Counsel put together a convincing case, and during mediation demonstrated that, notwithstanding the barriers erected by the executive exemption, they were able to develop a convincing case. This recovery for the Class is a direct result of effective lawyering and the acumen and diligence of Plaintiffs' Counsel. Such skill should be rewarded. *See J.N. Futia Co. v. Phelps Dodge Indus., Inc.*, No. 78 Civ. 4547, 1982 WL 1892 (S.D.N.Y. Sept. 17, 1982).

### 5. The Complexity of This Action's Factual and Legal Questions

Courts recognize that the complexity and difficulty of the issues in a case are significant factors to be considered in making a fee award. *See Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974). As previously discussed, numerous unresolved and evolving legal issues remained and would be presented at each stage of this litigation. Had this settlement not been achieved, the factual and legal questions at issue would have been the subject of many hours of depositions and trial testimony. Numerous difficult issues would be raised in Plaintiff's attempt to prove Defendants liable under the applicable legal standards. Given the inherent complexities of a wage and hour class action, the fee requested is more than fair.

### 6. The Contingent Nature of the Case and the Financial Burden Carried by Plaintiff's Counsel

A determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties overcome in obtaining a settlement.

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See Richard Posner, Economic Analysis of Law* §21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299 (9th Cir. 1994).

Plaintiffs' Counsel have received no compensation during the course of this litigation and have incurred over $21,000 in expenses in litigating for the benefit of the Class, and have also spent a substantial amount of time to obtain this result. See Paul

Decl. at ¶¶ 4, 6; Gibbs Decl. at ¶¶ 4, 6.  Any fee award or expense reimbursement to Plaintiffs' Counsel has always been completely contingent on the result achieved and on this Court's exercise of its discretion in making any award.

### 7. A 25 Percent Fee Award Is At or Below the Market Rate

As outlined above, a 25 percent fee, or more, has been repeatedly awarded by district courts in this circuit, and is in line with awards in numerous other similar cases.

In addition, the requested fees reflect the private marketplace, a result repeatedly encouraged by the courts.  *See In re Cont'l Ill. Sec. Litig.,* 962 F.2d 566, 572 (7th Cir. 1992).  In private litigation, attorneys regularly contract for contingent fees between 30 percent and 40 percent directly with their clients. *See Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."); *In re MD.C. Holdings Sec. Litig.*, 1990 WL 454747, at *7 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery.").  These percentages are the prevailing market rates throughout the United States for contingent representation.

In class action common fund cases such as this, class counsel's attorneys' fees can only be determined by the court in the exercise of its discretion.  Here, Plaintiffs' Counsel request an award of only 25 percent, which is below the traditional range for contingent fee litigation, and at or below the percentage fee typically awarded in class action litigation.  An award of the requested fee recognizes the benefits conferred on the Class and the circumstances under which this result was accomplished.  It is fair to both counsel and the Class and should be awarded by the Court.

Finally, the quality and vigor of opposing counsel is important in evaluating the services rendered by Plaintiffs' Counsel. *Charter*, 2005 WL 4045741, at *17. Plaintiffs' Counsel were opposite very able counsel, the law firm of Littler Mendelson, who specializes in this area of practice and vigorously defended its clients. Its fee was not contingent on the outcome of the litigation. "[I]t is reasonable for Plaintiffs' Counsel... [to] be as well paid as their adversaries who did not work on a contingency basis." *Id.* at *54. Under all of the circumstances present here, a 25 percent fee plus expenses is fair and reasonable.

### III. PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Plaintiffs' Counsel request reimbursement for expenses incurred in prosecuting this litigation on behalf of the Class in an aggregate amount of $21,887.10. These expenses are itemized in the declaration of counsel submitted herewith. *See* Paul Decl. at Ex. A-2; Gibbs Decl. at Ex. A-2.

The appropriate analysis in determining whether particular costs are compensable is whether the costs are of the type typically billed by attorneys to paying clients in the marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (internal citation omitted); *see also Abrams v. Lightolier, Inc.,* 50 F.3d 1204, 1225 (3d Cir. 1995) (expenses recoverable if customary to bill clients for them); *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42,* 8 F.3d 722, 725-26 (10th Cir. 1993) (expenses reimbursable if normally billed to client).

In *Brown v. Pro Football*, 839 F. Supp. 905 (D.D.C. 1993), the court addressed whether plaintiffs who created a common fund were entitled to reimbursement of expenses. Relying on *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989), the Court held that counsel's expenses were appropriately compensable:

> Plaintiffs' out-of-pocket costs for telephone, telecopier, air and local couriers, postage, photocopying, Westlaw research, secretarial overtime, and counsels' travel expenses are routinely billed to fee-paying clients, and thus are all compensable as part of a reasonable attorney's fee.

*Brown,* 839 F. Supp. at 916. The categories of expenses for which Plaintiffs' Counsel seek reimbursement here are categories normally charged to hourly clients and, therefore, should be reimbursed out of the common fund.

In sum, the award of $21,887.10 in expenses from the fund created by Plaintiffs' Counsel is appropriate and should be approved by the Court.

### IV.   CONCLUSION

The settlement of this action for $500,000.00 is an excellent result, and is the culmination of the diligent work of Plaintiffs' Counsel. For their efforts, counsel request that the Court approve the fee and expense application and enter an order awarding them fees of 25 percent of the Settlement Fund, totaling $125,000, and expenses in the amount of $21,887.10.

Dated: April 20, 2009                                    Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

/s/ Richard M. Paul III
George A. Hanson         MO Bar #43450
Richard M. Paul III      MO Bar #44233
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:  (816) 714-7170
Facsimile:   (816) 714-7101

Eric H. Gibbs
Dylan Hughes
Matthew B. George
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California  94108
Telephone:  (415) 981-4800
Facsimile:   (415) 981-4846

**Attorneys for Plaintiff**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies the foregoing was electronically filed on April 20, 2009 with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

>Harry Wellford, Jr.
>Kimberly A. Yates
>Littler Mendelson, P.C.
>2 CityPlace Avenue, Suite 200
>St. Louis, MO 63141
>
>Margaret Hart Edwards
>Littler Mendelson, P.C.
>650 California Street, 20th Floor
>San Francisco, CA 94108-2693
>
>Michael Mankes
>Littler Mendelson, P.C.
>One International Place, Suite 2700
>Boston, MA 02110
>
>**Counsel for Defendants**
>**Panera LLC and Panera Bread Company**

>　　　/s/ Richard M. Paul III
>　　　Attorney for Plaintiffs